# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 16-00179-01-CR-W-DGK |
| David A. Willard, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #10) filed on July 11, 2016, by defendant David A. Willard ("Willard"). On August 9, 2016, the undersigned held an evidentiary hearing on Willard's motion. Willard was present and was represented by his counsel, Assistant Federal Public Defender Marc Ermine. The government was represented by Assistant United States Attorney Bruce Clark. At the evidentiary hearing, the government called one witness: U.S. Probation Officer Kimberly Grace. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1 | Judgment in a civil case |
| Gov't. #2 | Order modifying conditions of supervised release I |
| Gov't. #3 | Order modifying conditions of supervised release II |
| Gov't. #4 | Second supplemental violation report |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. Kimberly Grace ("Grace") is a probation officer with the United States District Court for the Western District of Missouri. Tr. at 4.

2. Grace performs supervision on individuals subject to supervised release by the federal court. Tr. at 4-5.

3. As part of her supervisory activities, Grace occasionally performs supervisory searches (*i.e.*, searches performed of a probationer's property pursuant to the probationer's court-ordered conditions of supervised release). Tr. at 5.

4. Willard was a probationer assigned to Grace. Tr. at 5-6.

5. On March 23, 2007, a Judgment in a Criminal Case was entered against Willard based on the offense of Felon in Possession of a Firearm by the United States District Court for the Western District of Missouri. Gov't #1.

6. The Judgment entered by the district court included terms and conditions for Willard's supervised release. Tr. at 6-7; Gov't #1.

7. One of the conditions imposed on Willard was that he would "notify the probation officer at least ten (10) days prior to any change in residence." Tr. at 7; Gov't #1.

8. Another condition of Willard's supervised release provided:

> [Willard] shall submit his person, residence, office or vehicle to a search, conducted by the U.S. Probation Officer at a reasonable time and a reasonable manner, based on reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

Tr. at 7; Gov't #1.

9. Willard's supervision with Grace began on November 19, 2013. Tr. at 6, 8, 25.

10. Grace considers a "residence" to be where an individual "sleeps" and "spends their time." Tr. at 9, 38.

11. At the beginning of his supervised release, Willard resided with his mother. Tr. at 9, 25.

12. Subsequently, when his mother had to move, Willard changed his address to live with a sibling and, later, with his grandmother at 7117 Flora, Kansas City, Missouri. Tr. at 10, 14, 25-26; Gov't #4.

13. Willard notified Grace each of the above-noted times that he was changing residences in conformity with the conditions of his supervised release. Tr. at 10, 25.

14. On September 22, 2015, Grace received an anonymous call informing her that Willard was dealing and using drugs, had a second phone, had a firearm, and stayed "with his grandma off and on, but also stay[ed] at other residences." Tr. at 10, 28-30.

15. Thereafter, Grace investigated the allegations made by the anonymous caller. Tr. at 10-11, 31.

16. Grace required Willard to submit to a random drug test (as permitted by the conditions of the supervised release). Tr. at 11.

17. The test returned as positive for the presence of cocaine. Tr. at 11.

18. As a consequence of the positive drug test, on December 18, 2015, the district court enter an order modifying the terms of Willard's supervised release and, specifically adding a condition that:

> [Willard] shall be monitored by [radio frequency monitoring] for a period of four consecutive weekends.

Tr. at 11; Gov't #2.

19. On the subject weekends, the court order also restricted Willard to his residence. Gov't #2.[1]

20. The radio frequency monitoring of Willard commenced on January 4, 2016. Tr. at 12.

21. The monitoring (including the GPS monitoring after January 2016) showed that Willard spent time at 7117 Flora on weekends (as required by the court), but spent a bulk of his non-working time during the week at a residence located at 7012 Benton in Kansas City. Tr. at 19-21; Gov't #4.

22. Following the conclusion of the radio frequency/GPS monitoring of Willard, Grace surveilled the residence at 7012 Benton and observed Willard's vehicle at the location on February 11, 17, 18, and 22, 2016. Tr. at 22; Gov't #4.

---

[1] After Willard tested positive in drug tests again in November and December of 2015, on January 25, 2016, the district court entered another order modifying the conditions of Willard's supervised release adding GPS monitoring. Tr. at 17-19; Gov't #3.

3

23. Grace also observed a vehicle registered to Willard's reported girlfriend at 7012 Benton on February 11, 16, 17, 18, and 22, 2016.  Gov't #4.

24. On February 14, 2016, Grace told Willard that she was aware that he was not staying at his approved and reported residence (with his grandmother) and Willard responded that he was staying with his girlfriend (later changing it to "his sister and cousin").  Tr. at 22-23.

25. On February 22, 2016, Grace and a team conducted a probationary search of 7012 Benton.  Tr. at 23.

26. The search of 7012 Benton found a firearm, alcohol, some marijuana, a check stub in Willard's name, and a dog that some of the other inhabitants described as Willard's dog.  Tr. at 24.

## PROPOSED CONCLUSIONS OF LAW

In his motions to suppress, Willard challenges the Constitutionality of the search of the residence at 7012 Benton and seeks to suppress the fruits of that warrantless search.  The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."  U.S. Const. amend. IV.  As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures.  *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960).  In many search and seizure scenarios – particularly where a residence is involved – the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant.  In this case, law enforcement officers did not have a warrant to enter or search 7012 Benton.  To that end, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)).

4

In the present case, the government seeks to justify the entry and search of 7012 Benton as a Constitutionally reasonable probationary search. The Supreme Court has noted that "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights,* 534 U.S. 112, 118-19, 122 S.Ct. 587, 591 (2001) (*quoting, in part, Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 1300 (1999)). As noted by the Supreme Court in *Knights*:

> [An individual's] status as a probationer subject to a search condition informs both sides of that balance. Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.

*Knights,* 534 U.S. at 119, 122 S.Ct. at 591 (*quotations and citations omitted*). Thus, the Court recognized that "probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* (*quotations and citations omitted*). Consequently, "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.* And when a court imposes a search condition upon a probationer, it "significantly diminishe[s] [the probationer's] reasonable expectation of privacy." *Id.* at 120, 122 S.Ct. at 592.

On the other hand, "[i]n assessing the governmental interest side of the balance, it must be remembered that 'the very assumption of the institution of probation' is that the probationer 'is more likely than the ordinary citizen to violate the law.'" *Id.* (*quoting, in part, Griffin v. Wisconsin,* 483 U.S. 868, 880, 107 S.Ct. 3164, 3172 (1987)). The government's "interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." *Knights,* 534 U.S. at 121, 122 S.Ct. 592.

The Court in *Knights* concluded that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of [a] probationer's house." *Id.* It is that standard with which the Court evaluates the warrantless search of 7012 Benton.

The degree of individualized suspicion necessary for a probationary search "is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *Id.* (*citation omitted*). Thus, a law enforcement officer having reasonable suspicion that a probationer, who is subject to a search condition, is criminally active is sufficient to establish "enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* And those "same circumstances . . . render a warrant requirement unnecessary." *Id.*

Moreover, as recently articulated by the Eighth Circuit, a probationary search is justified if an officer has a reasonable suspicion that a term of a probationer's supervised release is being violated, *i.e.*, the search is conducted for probationary purposes. *United States v. Makeeff*, 820 F.3d 995, 1001 (8th Cir. 2016). *See also United States v. Brown,* 346 F.3d 808, 811 (8th Cir. 2003) ("[W]hen a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that [probationary] condition without a warrant based only upon that officer's reasonable suspicion that the probationer is violating his probation's terms."). As explicitly noted by another appellate court:

> [T]he object of [the probation officer's] suspicion – [the probationer's] potential violation of the terms of his probation as opposed to a generally applicable criminal statute-does not impact the availability of the *Knights* framework. For the purposes of our Fourth Amendment inquiry, a probationer's violation of the terms of probation is comparable to his violation of a criminal statute.

6

*United States v. Payne*, 588 Fed. App'x 427, 432, (6th Cir. 2014) (*quoting United States v. Herndon*, 501 F.3d 683, 689 (6th Cir. 2007))

In this case, the Court concludes that the probation officer had sufficient reasonable suspicion that Willard was residing at a location that had not been reported to or approved by the probation officer. To that end, the probation officer had information:

(1) from an anonymous caller, that Willard was not living with his grandmother,

(2) from the tracking, that Willard was spending the bulk of his non-work time during the week at 7012 Benton,

(3) from surveillance, that Willard was spending the bulk of his non-work time during the week at 7012 Benton, and

(4) from Willard himself, that – when asked where he was residing, he responded that he was staying with his girlfriend (later changing it to "his sister and cousin").

Taken together, this information established reasonable suspicion[2] that Willard was not residing at the residence disclosed to and approved by the probation office so as to permit the probation officer to institute a warrantless probationary search of 7012 Benton.

---

[2] Citing to a district opinion from California, Willard argues that a probation officer "must have probable cause to believe that the probationer is a resident of the house to be searched." *United Sates v. Gates*, 745 F.Supp.2d 936, 941 (N.D. Cal. 2010). The *Gates* court relied on prior Ninth Circuit decisions in *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) and *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006). The continuing viability of this Ninth Circuit rule, however, is uncertain since portions of *Howard* and *Motley* were overruled by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012). Nonetheless, even assuming that the *Motley/Howard* rule is still good law, and further assuming that the Eighth Circuit would adopt such a similar rule, the Court nonetheless finds that in this case and under these facts, the probation officer had probable cause to believe that Willard was residing at 7012 Benton. *Compare United States v. Grandberry*, 730 F.3d 968, 975 (9th Cir. 2013) ("Applying the *Motley/Howard* rule, probable cause as to residence exists if an officer of 'reasonable caution' would believe, 'based on the totality of [the] circumstances,' that the parolee lives at a particular residence.").

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #10) filed on July 11, 2016, by defendant David A. Willard.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

>      */s/ John T. Maughmer*
> **John T. Maughmer**
> **United States Magistrate Judge**